## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | | |
|---|---|---|
| ROBERT L. HARRIS, | ) | |
| | ) | CASE NO.     5:10-cv-701 |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | MAGISTRATE JUDGE GREG WHITE |
| | ) | |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner of Social Security | ) | **MEMORANDUM OPINION & ORDER** |
| | ) | |
| Defendant. | ) | |

Plaintiff Robert L. Harris ("Harris") challenges the final decision of the Commissioner of Social Security, Michael J. Astrue ("Commissioner"), denying Harris's claim for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act ("Act"), 42 U.S.C. § 1381 *et seq.*  This matter is before the Court pursuant to 42 U.S.C. § 405(g) and the consent of the parties entered under the authority of 28 U.S.C. § 636(c)(2).

For the reasons set forth below, the final decision of the Commissioner is AFFIRMED.

### I.  Procedural History

On December 26, 2007, Harris filed an application for SSI alleging a disability onset date of August 12, 2007.  His application was denied both initially and upon reconsideration.  Harris timely requested an administrative hearing.

On June 11, 2009, an Administrative Law Judge ("ALJ") held a hearing during which

Harris, represented by counsel, testified.  Mark Anderson also testified as an impartial vocational

expert ("VE").  On July 15, 2009, the ALJ found Harris was able to perform a significant

number of jobs in the national economy and, therefore, was not disabled.  The ALJ's decision

became the final decision of the Commissioner when the Appeals Council denied further review.


## II.  Evidence

***Personal and Vocational Evidence***

Age forty-nine at the time of his administrative hearing, Harris was a "younger" person

under the social security regulations.  *See* 20 C.F.R. § 416.963(c).  Harris has a high school

diploma and past relevant work as a television repairman.

***Relevant Medical Evidence (Mental)***

On February 20, 2008, a consultative examination was performed by Robert Dallara, Jr.,

Ph.D., at the request of the Bureau of Disability Determination.  (Tr. 553-57.)  Dr. Dallara noted

that there was no evidence that Harris was under the influence of alcohol during the interview.

(Tr. 554.)  Dr. Dallara further noted that Harris's insight and judgment appeared to be mildly

impaired, and commented that Harris may have some difficulties living independently, making

important decisions concerning his future, and managing funds.  (Tr. 555.)  He diagnosed

alcohol dependence in self-reported remission, cognitive disorder not otherwise specified, and

depression not otherwise specified.  *Id.*  He assigned a Global Assessment of Functioning (GAF)

score of 52.[1]  *Id*.  He concluded that Harris's ability to relate to others, to carry out simple one or two-step instructions, to maintain attention and concentration, and to withstand stress and pressure associated with day-to-day work activity were all mildly impaired.  (Tr. 556.)  Dr. Dallara did not believe that Harris could manage his funds "in his own best interest" if benefits were granted.  *Id*.

On March 10, 2008, State Agency psychologist Marianne Collins, Ph.D., completed a Psychiatric Review Technique form after reviewing Harris's records from Andrew McIntosh, M.D., Akron General Medical Center, and Dr. Dallara.  (Tr. 447-59.)  She found that Harris had a cognitive disorder not otherwise specified and alcohol dependence in self-reported remission. (Tr. 448, 455.)  She also found that Harris had only a mild degree of limitation in activities of daily living, maintaining social functioning, and in maintaining concentration, persistence, or pace.  (Tr. 457.)  She reported no episodes of decompensation of extended duration and noted that there was no evidence establishing the presence of "C" criteria.  (Tr. 457-58.)

On September 26, 2008, State Agency psychologist Vicki Casterline, Ph.D., reviewed all the evidence in the file and affirmed the above assessment of Dr. Collins.  (Tr. 655.)

On February 9, 2009 and March 19, 2009, Harris was seen by DeAnna Frye, Ph.D., at Neurology and Neuroscience Associates, Inc. on referral from his primary care physician, Dr. McIntosh, M.D., due to reports of short term memory loss.  (Tr.656.)  Dr. Frye reviewed Dr. McIntosh's records and interviewed Harris.  *Id*.  She requested but did not receive records from

---

[1]  A GAF score between 51 and 60 indicates moderate symptoms or moderate difficulty in social, occupational, or school functioning.  A person who scores in this range may have a flat affect, occasional panic attacks, few friends, or conflicts with peers and co-workers.  *See Diagnostic and Statistical Manual of Mental Disorders* 34 (American Psychiatric Association, 4th ed. revised, 2000).

Akron Medical Center in time for her report.  *Id*.  She stated that Dr. McIntosh's records confirm

a history of short-term memory loss.  (Tr. 657.)  She also administered a series of psychological

tests.  *Id*.  Feeling that Harris had  "put forth good motivation and effort," Dr. Frye opined that

the tests appeared to be an accurate reflection of his abilities at that time.  *Id*.  Based upon her

testing results, Dr. Frye offered the following summary and recommendations:

> Intellectual functions are within the Low Average range at this time with some
> variability of performance noted. [Harris] demonstrates relative weaknesses on
> measures of attention with mental processing speed skills significantly
> compromised at this time.  Significant attention concerns related to inattention as
> well as impulsivity were also noted.  Performance on visual scanning and
> graphomotor tasks which also included components of attention and processing
> speed also suggests severe impairment.  Based on his performance on measures of
> verbal abilities it is likely that [Harris's] previous level of functioning prior to his
> alcohol abuse was at least within the average range.  His performance on
> measures of language suggest moderate to severe deficits with lexical fluency
> while naming and semantic fluency abilities are intact.  Memory deficits appear
> rather profound at this time with moderate to severe impairment noted on
> measures of recall of complex visual information while moderate deficits are
> noted on auditory recall measures.  Executive processes involving higher level
> reasoning and problem solving are also significantly compromised.  Assessment
> of personality function is interpreted with caution due to a defensive test taking
> approach; however, [Harris] is noted to have endorsed concerns related to
> depression as well as numerous somatic complaints consistent with his
> neurological history.
>
> In summary, [Harris] demonstrates a pattern of global cognitive impairment with
> rather profound memory, executive function and attention concerns as well as
> decreased lexical fluency.  His pattern of performance is consistent with his
> history of severe alcoholism.  It is unclear at the time of testing if [Harris's] liver
> enzymes and other metabolic levels had returned to normal due to his being a
> poor historian and medical records not being received at the time this report was
> generated.  Therefore, his prognosis for continued gains is uncertain at this
> time.  However, his present performance indicates that he is not currently capable
> of gainful employment due to his significant cognitive compromise.  Furthermore,
> his ability to live independently as well as operate a motor vehicle should be
> further evaluated given his reported functional difficulties.

(Tr. 659.)

4

In the area of emotional function, Dr. Frye noted that "[Harris's] performance on the MMPI-2RF [Minnesota Multiphasic Personal Inventory-2] indicated that he approached the task in a rather defensive manner, suggesting concerns related to validity potentially indicating a likely underestimate of current emotional function." (Tr. 659.)  She assigned a GAF score of 45.[2]  She diagnosed dementia due to alcoholism, depressive disorder not otherwise specified, alcohol dependence in early remission, and cirrhosis of the liver.  *Id.*

On May 6, 2009, Dr. Frye completed a Medical Opinion Re Ability to do Work Related Activities (Mental) form.  (Tr. 670-71.)  She found Harris had no useful ability to function in the following categories: remembering work-like procedures, completing a normal workday and work week without interruptions from psychologically based symptoms, and understanding and remembering detailed instructions.  *Id.*  She found he would be unable to meet competitive standards in ten categories, was seriously limited but not precluded in four categories, and limited but satisfactory in five categories.  *Id.*

***Hearing Testimony***

At the hearing, Harris testified to the following:

- The major problems that prevent him from working are his memory and his back. His memory prevents him from doing things in a series, like getting gas and grocery shopping.  He has pre-paid for gas but forgotten to pump it.  (Tr. 30.)

- He has a herniated disc and degenerative disc disease.  (Tr. 31.)  He has difficulty sitting, standing and walking.  (Tr. 31-32.)

- He stopped using alcohol in December of 2007.  (Tr. 35.)

---

[2]  A GAF score between 41 and 50 indicates serious symptoms or a serious impairment in social, occupational, or school functioning.  A person who scores in this range may have suicidal ideation, severe obsessional rituals, no friends, and may be unable to keep a job.  *See Diagnostic and Statistical Manual of Mental Disorders*, *supra*, at 34.

The VE testified that Harris's past work as a television and electronic technician required medium exertion, was skilled, and would not readily transfer to other occupations or industries. (Tr. 40.)  The ALJ asked the VE the following hypothetical questions:

> I'd like you to assume an individual limited to medium work which involves lifting and carrying 50 pounds occasionally and 25 pounds frequently, standing and walking a total of 6 hours in 8 or sitting a total of 6 hours in 8; however, this person should be limited to simple routine tasks with duties in a work environment that have few changes and no strict production standards, no rigorous production pace and then after -- I'm not sure if this will help you out or make things more efficient, but then the next question I'm going to have the same nonexertional limits, but drop down to light, but starting off with the first one, I assume past work is ruled out, right?

(Tr. 42.)

The VE testified that such an individual could not perform Harris's past relevant work. (Tr. 42.)  The VE, however, testified that there are a number of jobs such an individual could perform at both the medium and light exertional levels.  *Id.*  At the medium level, the VE identified the following jobs: hand packager, Dictionary of Occupational Titles (DOT) § 920.587-018 – 102,000 jobs nationally, 6,200 statewide, and 2,000 in northeast Ohio; kitchen helper, DOT § 318.687-010 – 746,000 nationally, 25,000 statewide, and 6,000 in northeast Ohio; and laundry laborer, DOT § 361.685-018 – 100,000 nationally, 4,000 statewide, and 1,500 in northeast Ohio.  (Tr. 43.)  At the light level of exertion, the VE identified the following jobs: assembler of small products, DOT § 739.687-030 – 165,000 nationally, 25,060 statewide, and 5,500 in northeast Ohio; assembler of electrical accessories, DOT § 729.687-010 – 244,000 nationally, 9,000 statewide, and 3,500 in northeast Ohio; electronics worker, DOT § 726.687-010 – 860,000 nationally, 35,000 statewide, and 5,000 in northeast Ohio.  *Id.*  The ALJ conceded that there was no need to question the ALJ about limitations contained in the

6

evaluation of Dr. Frye, as the limitations therein would obviously render Harris unemployable.

(Tr. 44-45.)

### III.  Standard for Disability

A claimant may be entitled to receive SSI benefits when he establishes disability within

the meaning of the Act.  20 C.F.R. § 416.905; *Kirk v. Sec'y of Health & Human Servs.,* 667 F.2d

524 (6th Cir. 1981).  The entire process entails a five-step analysis as follows: First, the claimant

must not be engaged in "substantial gainful activity."  Second, the claimant must suffer from a

"severe impairment."  A "severe impairment" is one which "significantly limits ... physical or

mental ability to do basic work activities."  Third, if the claimant is not performing substantial

gainful activity, has a severe impairment that is expected to last for at least twelve months, and

the impairment, or combination of impairments, meets a required listing under 20 C.F.R. § 404,

Subpt. P, App. 1, the claimant is presumed to be disabled regardless of age, education or work

experience. 20 C.F.R. §§ 404.1520(d) and 416.920(d)(2000).  Fourth, if the claimant's

impairment does not prevent the performance of past relevant work, the claimant is not disabled.

For the fifth and final step, even though the claimant's impairment does prevent performance of

past relevant work, if other work exists in the national economy that can be performed, the

claimant is not disabled.  *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990).  To receive SSI

benefits, a claimant must also meet certain income and resource limitations.  20 C.F.R. §§

416.1100 and 416.1201.

### IV.  Summary of Commissioner's Decision

The ALJ found Harris established medically determinable, severe impairments, to

include history of liver cirrhosis, thrombocytopenia and acute renal failure due to alcohol

7

dependence that has been in remission since November 2007, depression not otherwise specified, and cognitive disorder not otherwise specified.  However, his impairments, either singularly or in combination, did not meet or equal one listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1.  Harris was found incapable of performing his past work activities, but was determined to have a Residual Functional Capacity ("RFC") for a limited range of medium work.  The ALJ then used the Medical Vocational Guidelines ("the grid") as a framework and VE testimony to determine that Harris is not disabled.

### V.  Standard of Review

This Court's review is limited to determining whether there is substantial evidence in the record to support the ALJ's findings of fact and whether the correct legal standards were applied. *See Elam v. Comm'r of Soc. Sec.*, 348 F.3d 124, 125 (6th Cir. 2003) ("decision must be affirmed if the administrative law judge's findings and inferences are reasonably drawn from the record or supported by substantial evidence, even if that evidence could support a contrary decision."); *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983).  Substantial evidence has been defined as "[e]vidence which a reasoning mind would accept as sufficient to support a particular conclusion.  It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966); *see also Richardson v. Perales*, 402 U.S. 389 (1971).

The findings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion.  *Buxton v. Halter*, 246 F.3d 762, 772-3 (6th Cir. 2001) (*citing Mullen*, 800 F.2d 535, 545 (6th Cir. 1986)); *see also Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389-90 (6th Cir. 1999)("Even if the evidence could also

support another conclusion, the decision of the Administrative Law Judge must stand if the evidence could reasonably support the conclusion reached. *See Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997).") This is so because there is a "zone of choice" within which the Commissioner can act, without the fear of court interference. *Mullen*, 800 F.2d at 545 (*citing Baker v. Heckler*, 730 F.2d 1147, 1150 (8th Cir. 1984)).

In addition to considering whether the Commissioner's decision was supported by substantial evidence, the Court must consider whether the proper legal standard was applied. Failure of the Commissioner to apply the correct legal standards as promulgated by the regulations or failure to provide the reviewing court with a sufficient basis to determine that the Commissioner applied the correct legal standards are grounds for reversal where such failure prejudices a claimant on the merits or deprives a claimant of a substantial right. *See White v. Comm'r of Soc. Sec.*, 572 F.3d 272 (6th Cir. 2009); *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2006).

## VI. Analysis

Harris claims the ALJ erred because: (1) he failed to articulate a valid basis for rejecting the treating and consulting source opinions; and, (2) substantial evidence fails to support the finding that Harris could perform jobs existing in significant numbers in the regional and national economies. (Doc. No. 14.)

### *Treating and Consulting Opinions*

Harris asserts that the opinion of Dr. Frye constitutes a treating source, and that the ALJ rejected her opinion without articulating valid reasons for doing so. (Doc. No. 14 at 9-11.) Harris further argues that the opinion of consultative examiner Dr. Dallara was also improperly

9

rejected. *Id*.

Under Social Security regulations, the opinion of a treating physician is entitled to controlling weight if such opinion (1) "is well-supported by medically acceptable clinical and laboratory diagnostic techniques" and (2) "is not inconsistent with the other substantial evidence in [the] case record." *Meece v. Barnhart*, 192 F. App'x 456, 560 (6th Cir. 2006) (*quoting* 20 C.F.R. § 404.1527(d)(2)); accord 20 C.F.R. § 416.927. "[A] finding that a treating source medical opinion . . . is inconsistent with the other substantial evidence in the case record means only that the opinion is not entitled to 'controlling weight,' not that the opinion should be rejected." *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399 (6th Cir. 2009) (*quoting* Soc. Sec. Rul. 96-2p, 1996 SSR LEXIS 9 at *9); *Meece*, 192 F. App'x at 460-61 (Even if not entitled to controlling weight, the opinion of a treating physician is generally entitled to more weight than other medical opinions.) Furthermore, "[t]reating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in 20 C.F.R. § 404.1527 and 416.927." *Blakley*, 581 F.3d at 408; accord .[3]

Nonetheless, the opinion of a treating physician must be based on sufficient medical data, and upon detailed clinical and diagnostic test evidence. *See Harris v. Heckler*, 756 F.2d 431, 435 (6th Cir. 1985); *Bogle v. Sullivan*, 998 F.2d 342, 347-48 (6th Cir. 1993); *Blakley*, 581 F.3d at 406 ("It is an error to give an opinion controlling weight simply because it is the opinion of a

---

[3]  Pursuant to 20 C.F.R. § 404.1527(d)(2), when not assigning controlling weight to a treating physician's opinion, the Commissioner should consider the length of the relationship and frequency of examination, the nature and extent of the treatment relationship, how well-supported the opinion is by medical signs and laboratory findings, its consistency with the record as a whole, the treating source's specialization, the source's familiarity with the Social Security program and understanding of its evidentiary requirements, and the extent to which the source is familiar with other information in the case record relevant to the decision.

10

treating source if it is not well-supported by medically acceptable clinical and laboratory

diagnostic techniques or if it is inconsistent with other substantial evidence in the case record.")

(*quoting* SSR 96-2p).  Moreover, the ALJ is not bound by conclusory statements of a treating

physician that a claimant is disabled, but may reject such determinations when good reasons are

identified for not accepting them.  *King v. Heckler*, 742 F.2d 968, 973 (6th Cir. 1984); *Duncan v.*

*Sec'y of Health & Human Servs.*, 801 F.2d 847, 855 (6th Cir. 1986); *Garner v. Heckler*, 745 F.2d

383, 391 (6th Cir.1984).  According to 20 C.F.R. § 416.927(e)(1), the Social Security

Commissioner makes the determination whether a claimant meets the statutory definition of

disability.  This necessarily includes a review of all the medical findings and other evidence that

support a medical source's statement that one is disabled.  "A statement by a medical source that

you are 'disabled' or 'unable to work' does not mean that we will determine that you are

disabled."  *Id*.  It is the Commissioner who must make the final decision on the ultimate issue of

disability.  *Duncan*, 801 F.2d at 855;  *Harris v. Heckler*, 756 F.2d 431, 435 (6th Cir. 1985);

*Watkins v. Schweiker*, 667 F.2d 954, 958 n. 1 (11th Cir. 1982).

      Harris's brief fails to explain how the ALJ's opinion constitutes a rejection of the opinion

of consulting psychologist Dr. Dallara.  Harris's argument focuses on Dr. Frye's conclusions

and, as to Dr. Dallara, makes only the assertion that Harris suffered from a cognitive disorder.

(Doc. No. 14 at 9-11.)  The ALJ found that Harris suffered from a number of severe

impairments, including a cognitive disorder not otherwise specified.  (Tr. 9.)  As such, the ALJ

adopted rather than rejected this conclusion of Dr. Dallara.  Overall, Dr. Dallara found only mild

impairment in Harris's work related mental abilities.  (Tr. 556.)  The Court sees no obvious

inconsistency between Dr. Dallara's findings and the ALJ's ultimate RFC finding, which limited

Harris to "simple routine tasks in positions where there would be few changes in his job duties or work environment." (Tr. 12.)  The ALJ's RFC further restricted Harris to jobs without strict or rigorous productions standards.  *Id*.  Therefore, the Court disagrees that the ALJ rejected the opinion of Dr. Dallara.

        With respect to the opinion of Dr. Frye, the ALJ found as follows:

> In assessing the severity of Mr. Harris' mental impairments since the August 12, 2007 alleged onset date, little weight is given to the opinions found in the reports of a neuropsychologist [Dr. Frye] who evaluated Mr. Harris on February 9, 2009 and March 19, 2009 (see Exs. l8F and 20F).  If fully credited, the opinions in these two reports would lead to the conclusion that Mr. Harris has listing-level mental impairments.  However, besides being inconsistent with the opinions of the state agency psychologists who reviewed this matter and the opinions of the consulting psychologist who evaluated Mr. Harris on February 20, 2008, I conclude that the neuropsychologist's opinions give undue deference to Mr. Harris' subjective complaints, and are not otherwise supported by the medical and non-medical evidence as a whole.  I also note here that results from the administration of the Minnesota Multiphasic Personal Inventory-2, a personality test used to detect psychopathology and aid in making diagnoses, were described by the neuropsychologist as being invalid (see Ex. l8F, p. 4).  This is evidence that Mr. Harris was exaggerating his problems and minimizing his strengths.

(Tr. 11, n. 10.)

        The ALJ clearly rejected the opinion of Dr. Frye.  Nonetheless, the parties disagree on two key issues.  First, the Commissioner disputes Harris's contention that Dr. Frye constitutes a "treating source" under the regulations.  (Doc. No. 15 at 9-10.)  Second, the Commissioner avers that the ALJ's decision offers legally sufficient reasons for rejecting Dr. Frye's opinion.  (Doc. No. 15 at 10-13.)

        While the ALJ does not expressly state his opinion whether he considered Dr. Frye a "treating" or an "examining" source, the ALJ did refer to Dr. Frye's evaluation as one that was made on a "consultative basis."  (Tr. 10.)  The ALJ also appears to have had doubts whether Dr.

Frye examined Harris at the request of Harris's primary care physician or his attorney, observing

that "the first person noted in the report to being sent a copy of the report is Mr. Harris'

attorney."[4]  (Tr. 10, citing Tr. 660.)  Under the regulations, a "treating source" is defined as

follows:

> Treating source means your own physician, psychologist, or other acceptable
> medical source who provides you, or has provided you, with medical treatment or
> evaluation and who has, or has had, an ongoing treatment relationship with you.
> Generally, we will consider that you have an ongoing treatment relationship with
> an acceptable medical source when the medical evidence establishes that you see,
> or have seen, the source with a frequency consistent with accepted medical
> practice for the type of treatment and/or evaluation required for your medical
> condition(s).  We may consider an acceptable medical source who has treated or
> evaluated you only a few times or only after long intervals (*e.g.*, twice a year) to
> be your treating source if the nature and frequency of the treatment or evaluation
> is typical for your condition(s).  We will not consider an acceptable medical
> source to be your treating source if your relationship with the source is not based
> on your medical need for treatment or evaluation, but solely on your need to
> obtain a report in support of your claim for disability. In such a case, we will
> consider the acceptable medical source to be a nontreating source.

20 C.F.R. § 416.902.

Though, the decision is not explicit, it is clear enough to conclude that the ALJ did not

believe Dr. Frye constituted a treating source.  His implicit finding that Dr. Frye acted only as a

consultative examiner for purposes of disability is not unreasonable in light of the facts nor

contrary to the applicable regulations.  Furthermore, even if Dr. Frye was not retained by

Harris's counsel, this Court is skeptical whether two visits so close together establishes a treating

relationship that provides the "longitudinal picture" of a claimant's impairments that justifies the

added deference treating relationships receive.  *See* 20 C.F.R. § 416.927(d)(2).  In *Smith v.*

---

[4]  At the hearing, Harris's counsel initially agreed with the ALJ's statement that Dr. Frye's
evaluation was commissioned by counsel (Tr. 21), though counsel later indicates that she did
not set the appointment for him.  (Tr. 45.)

13

*Comm'r of Soc. Sec.*, 482 F.3d 873, 876 (6th Cir. 2007), the Court found a doctor was not

deserving of treating source review when the doctor examined the claimant only once and wrote

a single "physical capacity evaluation."   Here, Harris's two visits appear to constitute one

session of testing and subsequent follow up visit a month later to discuss the test results.  (Tr.

657.)  Dr. Frye did not prescribe any therapy or treatment, and there is no evidence that Dr. Frye

participated in an ongoing treatment relationship with Harris.  Rather, Dr. Frye made some

recommendations, but does not appear to be part of Harris's subsequent treatment.  (Tr. 659-60.)

As such, Dr. Frye's opinion is not entitled to the same deference as a treating source's opinion,

and the ALJ did not err by failing to construe it as such.

While Dr. Frye's opinion still constitutes an acceptable medical source and is generally

entitled to more weight than that of a non-examining source, the ALJ need not offer as much

detail when rejecting such an opinion.  20 C.F.R. § 404.927(d)(1).  The regulations only mandate

that an ALJ "explain in the decision the weight given to the opinions of a State agency medical

or psychological consultant or other program physician or psychologist as the administrative law

judge must do for any opinions from treating sources, nontreating sources, and other

nonexamining sources who do work for us."  20 C.F.R. § 416.927(f)(2)(ii).  The Court finds that

the ALJ explained the weight ascribed to Dr. Frye's opinion, finding that it was inconsistent with

the opinions of both State Agency psychologists and, arguably, the opinion of Dr. Dallara who

found only mild limitations.  As the ALJ's explanation is sufficient under the regulations,

Harris's assignment of error is not well taken.

***Hypothetical***

Harris also asserts that there was not substantial evidence to support the finding that he

14

could perform jobs existing in significant numbers in the regional and national economies.

A hypothetical question must precisely and comprehensively set forth every physical and mental impairment that the ALJ accepts as true and significant.  *See Varley v. Sec'y of Health & Human Servs.*, 820 F.2d 777, 779 (6th Cir. 1987).  Where the hypothetical question is supported by evidence in the record, it need not reflect unsubstantiated allegations by the claimant.  *See Blacha v. Sec'y of Health & Human Servs.*, 927 F.2d 228, 231 (6th Cir. 1990).  In fashioning a hypothetical question, the ALJ is required to incorporate only those limitations that he accepts as credible.  *Griffeth v. Comm'r of Soc. Sec.*, 217 Fed. Appx. 425, 429 (6th Cir. 2007) (*citing Casey v. Sec'y of HHS*, 987 F.2d 1230, 1235 (6th Cir. 1993)).  However, where the ALJ relies upon a hypothetical question that fails to adequately account for all of the claimant's limitations, it follows that a finding of disability is not based on substantial evidence.  *See Newkirk v. Shalala*, 25 F.3d 316, 317 (6th Cir. 1994).

As the Court understands Harris's argument, he believes the hypothetical was inaccurate because it did not incorporate Dr. Frye's conclusions.  This argument merely rehashes Harris's previous claim regarding the rejection of treating and consulting opinions, which the Court addressed above.  An ALJ need not include limitations that were found to be unsupported by the evidence.

Finally, Harris contends that the hypothetical was inaccurate because it did not include the physical limitations allegedly found by Yolanda Duncan, M.D.  (Doc. No. 14 at 13.)  Harris asserts that Dr. Duncan limited him to only 45 minutes of walking at a time and only 50 yards at a time.  A review of the record indicates that Harris indeed told Dr. Duncan that he is able to sit or stand for 45 minutes at a time before suffering from back pain, that he can walk fifty feet, and

that he can climb two flights of stairs.  (Tr. 565.)  A careful reading of Dr. Duncan's report, however, does not indicate that she believed Harris was so limited.  Rather, after finding that Harris used no ambulatory aids, had full range of motion in all extremities, had normal gait, and clinically normal joints, Dr. Duncan summarized as follows:

> Based on these findings, the patient *should not have any difficulty with work related physical activities such as sitting or standing for up to 45 minutes or walking up to 50 feet or climbing up to 2 flights of stairs*.  Hearing and speech are normal.  The patient should not have any difficulty traveling or following simple commands.

(Tr. 565) (emphasis added).

Dr. Duncan's statement cannot reasonably be construed as establishing Harris's *maximum* abilities.  Rather, Dr. Duncan merely stated that Harris would have no difficulty performing such activities – not that such activities marked the outward boundaries of his abilities.

As the VE's testimony was given in response to a hypothetical that reasonably reflected all the limitations that the ALJ found valid and credible, the VE's testimony constitutes substantial evidence capable of supporting the finding that Harris could perform jobs existing in significant numbers in the regional and national economies.

### VII.  Decision

For the foregoing reasons, the Court finds the decision of the Commissioner supported by substantial evidence.  Accordingly, the decision of the Commissioner is AFFIRMED.

IT IS SO ORDERED.

s/ Greg White
U.S. Magistrate Judge

Date: February 7, 2011

16